


Case 4:25-cv-07832-JST   Document 1   Filed 09/15/25   Page 1 of 12

FILED
SEP 15 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Vernell McCall<br>      Plaintiff,<br>  v.<br><br>JP Morgan Chase Bank, N.A.<br>      Defendant. | Case No:<br>CV 25-7832 JST<br><br>Jury Demand : Yes |

## INTRODUCTION

1. This is an action for damages brought by a consumer pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.

2. The FCRA requires data furnishers to provide accurate information to credit reporting agencies and to conduct a proper investigation of the disputed information. 15 U.S.C. §1681s-2(b).

## JURISDICTION AND VENUE

3. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because Defendant regularly conducts business in this district and a substantial part of the events giving rise to this action occurred here.

## PARTIES

5. Plaintiff, (hereinafter "Plaintiff ) is a resident of Contra Costa County in the state of California a natural person, and a consumer as defined in 15 U.S.C § 1681a(c).

6. Under the FCRA, a "person" is defined to include "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

7. Federal regulations implementing the FCRA further define a *furnisher* as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). Defendant qualifies as a furnisher under this definition and is therefore subject to the obligations of 15 U.S.C. § 1681s-2(b).

8. Defendant, JP Morgan Chase Bank, N.A. ("Defendant"), is a national bank that regularly provides and in the ordinary course of business furnishes information to one or more consumer reporting agencies about credit transactions or experiences with the consumer(s).

9. Defendant is a *person* as defined in 15 U.S.C. § 1681a(b), and as such is subject to the duties in 15 U.S.C. § 1681s-2(b). Federal regulations implementing the FCRA further define a *furnisher* as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). Defendant qualifies as a furnisher under this regulatory definition.

10. Defendant regularly conducts business in California and is licensed to do business in the state of California, with its principal address at 383 Madison Avenue, New York, NY 10179.

### BACKGROUND THE FCRA

11. The FCRA was enacted by Congress to promote the accuracy and fairness of credit reporting and that:

The banking system is dependent upon fair and accurate credit reporting.

Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence which is essential to the continued functioning of the banking system.

An elaborate mechanism has been developed for investigating and evaluating the creditworthiness, credit standing, credit capacity, character, and general reputation of consumers.

Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C § 1681.

## ALLEGATIONS

12. On or about October 2024 Defendant received a notice from law firm Hunt & Henriques LP; that legal action was going to be taken place regarding the account 426684 with JP Morgan Chase Bank N.A.

13. On or about December 20, 2024, before any lawsuit was filed, Plaintiff mailed a direct dispute and debt validation letter to Defendant.

14. In particular, Plaintiff requested: (a) why the matter was not being handled through arbitration under the governing agreement, (b) a copy of the credit agreement bearing Plaintiff's signature to establish contractual liability, (c) a complete chain of assignments showing Defendant's authority to collect, (d) proof that the lawsuit was filed in the proper venue, and (e) proof that Defendant was licensed to collect debts in California.

15. Defendant failed to provide the requested documentation, instead continuing to report the account in a manner that omitted both the dispute and the fact that the account was in active litigation.

16. Following Defendant's failure to provide the requested documentation, Plaintiff experienced measurable harm. Specifically, Plaintiff's credit limits on existing open credit

1  card accounts were reduced, lowering his available credit and negatively impacting his overall credit profile.

17. On or about February 12, 2025 Defendant, through Hunt & Henriques, LLP, filed a debt collection lawsuit in the Superior Court of Contra Costa County regarding the same account.

18. Plaintiff also noticed that when applying for new credit, although he was approved, the interest rates offered to him were significantly higher than expected.

19. After experiencing higher interest rates on approved applications, Plaintiff obtained his credit report directly from Experian to review the account information.

20. On or about August 15, 2025, Plaintiff filed a dispute with Experian, expressly stating that the account 426684 was subject to active litigation and was reporting inaccurately.

21. Plaintiff provided supporting documentation of the case filed in Superior Court Contra Costa County California by Defendant with the dispute through Experian.

22. On or about August 26, 2025 Defendant reinvestigation was completed and Defendant alleged it updated the account; upon further review Plaintiff notices no changes were made to reflect that the account was in a legal action and in dispute with the open case filed in Superior Court of Contra Costa County.

23. Defendant continued furnishing the tradeline to Experian without providing a remark of the account in a legal action or in dispute.. The omission of both the dispute and litigation status was materially misleading and created the false impression that the account was valid, undisputed, and enforceable.

24. Defendant reinvestigation results and continued reporting contains information that is materially misleading and thus inaccurate. See *Shaw v Experian Information Solutions Inc. 891 F. 3d, 749, 656 (9th cir.2018)* concluded that "any item of information on a consumer's credit report is "inaccurate" if it either is "patently incorrect" or is " misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."

25. Due to Defendant's conduct, Plaintiff has been compelled to endure higher interest rates on approved credit applications, reductions in credit limits on existing accounts, and resulting financial strain. Plaintiff has also suffered frustration, loss of sleep, migraines, and the burden of having to seek assistance to determine next steps to address the inaccurate reporting.

26. Defendant's conduct was willful and carried out in reckless disregard of its duties under 15 U.S.C. § 1681s-2(b), thereby violating Plaintiff's rights under the FCRA.

27. Despite receiving notice of the dispute, Defendant continued furnishing information it knew, or should have known, was incomplete and materially misleading.

28. Defendant's refusal to acknowledge the account as both "in dispute" and "legal action" shows a reckless indifference to the accuracy of Plaintiff's credit reporting.

29. Defendant verified the disputed information without properly considering the supporting documentation that was provided by the Plaintiff. This failure to review the documentation supporting the inaccurate account status is a violation of the FCRA.

30. The FCRA, section 1681s-2(b) contemplates three potential ending points to a re-investigation: verification of accuracy, a determination of an accuracy, or incompleteness, or a determination that the information *cannot be verified."* See 15 U SC1681s-2 (b)(1)(E).

31. When Experian produced the results of Defendant's reinvestigation, the tradeline was reported as "verified." This constituted a violation because Defendant did not adequately review or verify the account status using the account-level documentation Plaintiff provided. Defendant's reinvestigation was incomplete and materially misleading, which caused Experian to issue results that failed to reflect that the account was both in dispute and in litigation.

32. Defendant failed to conduct a reasonable reinvestigation because it ignored the supporting documentation Plaintiff provided showing the account was actively disputed and the subject of litigation. By disregarding this information Defendant's reinvestigation produced materially misleading and inaccurate results, which it reported back to Experian.

33. As the FCRA does not define "verify" or "investigation" we must look to the ordinary meaning, must look to the ordinary meaning of those terms. *See United States v Santos, 553 U.S. 507, 511, 128 s. Ct 2020, 2024 (2008)* ("When a term is undefined, we give it its ordinary meaning."); *See United States v Lopez, 590 F. 3d 1238, 1248* (11th cir. 2009) ("To ascertain the ordinary meaning, courts often turn to dictionary definition for guidance.")

34. The ordinary meaning of "verification" is: (1) "evidence that establishes or confirms the accuracy or truth of something." ; (2)" the process of research, examination, etc. required to

prove or establish authenticity or validity." (3) "a formal assertion of the truth of something, as bypath or affidavit; and (4) " a short confirmatory affidavit at the end of a pleading petition." *Haddad v Alexander, Zelmanksi, Danner & Fioritto PLLC, 758 F.3d 777, 782-83 (6th cir 2014)* (quoting Random House Unabridged Dictionary 2113 (2d ed. 1993).

35. "Verify" has a similar meaning in the legal context. See Black's Law Dictionary 1973 (10th ed. 2014) (verify vb (14c) (1). To prove to be true ; to confirm or establish the truth or truthfulness of; to authenticate. (2.) To confirm or substantiate by oath or affidavit; to swear to the truth of.") Finally, the term "investigation" is defined as "[a] detailed inquiry or systematic examination" or "searching inquiry." *Johnson, 357 F.3d at 430* (quoting Am. Heritage Dictionary 920 (4th ed. 2000); Webster's Third New Int'l Dictionary 1189 (1981)).

36. A reasonable jury could find a violation of 15 U.S.C. § 1681s-2(b) where Defendant relied solely on its internal records and failed to consult external sources, such as the supporting documentation Plaintiff uploaded with the dispute, the public docket of the active court case, or other readily available records that would have confirmed the account was the subject of ongoing litigation. Defendant's failure to consider this information rendered its reinvestigation unreasonable and its results materially misleading. *See Hinkle v. Midland (11th Cir. 2016)*

37. Verification might be accomplished by uncovering documentary evidence that is sufficient to prove that the information is true. *See Johnson v MBNA Am. Bank, N.A. 357 F.3d 426, 431 (4th cir. 2004).*

38. When a furnisher reports that disputed information has been "verified," the question of whether the furnisher behaved reasonably will turn on whether it acquired sufficient evidence to support the conclusion that the information was true. This is a factual question, and it will normally be reserved for the trier of fact.

39. Regulating agencies such as the consumer, financial protection bureau, and the Federal Trade Commission provide guidelines regarding "reasonable policies and procedures concerning the accuracy and integrity of furnished information." See 12 CFR 1022.42

40. This particular Code of Federal Regulations includes 'Appendix E,' which outlines inter-agency guidelines regarding the accuracy and integrity of information furnished to consumer

reporting agencies. These guidelines cover (i) the nature, scope, and objectives of required policies and procedures, (ii) the process for establishing and implementing such policies, and (iii) the specific components that these policies must include.

41. Discovery will show that Defendant failed to adopt, implement, and maintain reasonable written policies and procedures to ensure the accuracy and integrity of the information it furnished, as required by 12 C.F.R. § 1022.42 and Appendix E. Defendant's failure to maintain such procedures, or its reckless disregard of them, demonstrates willful noncompliance with its duties under 15 U.S.C. § 1681s-2(b).

42. Defendant has been reporting inaccurate information by issuing false and misleading credit data in Plaintiff's consumer credit reports. These reports have been disseminated to various parties and credit grantors, both known and unknown, from at October 2024 to present

43. As a result of Defendant's failure to conduct a reasonable reinvestigation, Plaintiff has been subjected to higher interest rates on approved credit applications and reductions in credit limits on existing accounts. These adverse changes increased Plaintiff's cost of borrowing and reduced available credit, creating ongoing financial strain.

44. In addition, Plaintiff experienced distress manifested by headaches, migraines, loss of sleep, and ongoing frustration as he attempted to determine his next steps and seek assistance in addressing the inaccurate reporting. This distress was directly tied to Defendant's continued furnishing of misleading credit information, which made it appear that the account was undisputed and fully enforceable despite being the subject of litigation.

### Count 1 Violation of the FCRA, 15 U.S.C §1681s-2(b)(1)(A) Against JP Morgan Chase Bank N.A.

Plaintiff re-alleges and incorporates all preceding paragraphs.

1. The FCRA requires that, after receiving notice of a dispute with regard to the completeness or accuracy of any information provided to a consumer reporting agency, the furnisher shall conduct an investigation with respect to the disputed information. 15 U.S.C. § 1681s-2(b)(1)(A). Defendant failed to conduct a reasonable investigation after receiving Plaintiff's dispute from Experian. Defendant disregarded documentation and information showing the account was in active litigation and disputed, and instead relied solely on internal records before reporting the account as "verified."

2. Defendant's unreasonable reinvestigation directly caused harm to Plaintiff, including the imposition of higher interest rates on approved credit applications, reductions in available credit limits, financial strain, frustration, loss of sleep, and headaches.

3. Defendant's conduct was willful, carried out in reckless disregard of its statutory duties, and demonstrates a pattern of noncompliance with 15 U.S.C. § 1681s-2(b)(1)(A).

4. Pursuant to 15 U.S.C. § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and costs of this action for Defendant's willful violations.

5. Alternatively, pursuant to 15 U.S.C. § 1681o, Plaintiff is entitled to actual damages and litigation costs if Defendant's violations are found to be negligent.

**Count 2 Violation of the FCRA, 15 U.S.C §1681s-2(b)(1)(B)
Against Defendant JP Morgan Chase Bank, N.A.**

6. All preceding paragraphs are re-alleged.

7. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to consider all relevant information forwarded to them by the consumer reporting agency, Experian and to notate the disputed information as disputed to Experian.

1  Defendant caused injury in fact, by causing, among other things, mental and emotional distress,
2  damage to Plaintiff's credit reputation and rating, and other injuries and damages to Plaintiff.
3
4  Defendant conduct was negligent and/or willful.
5
6  Plaintiff is entitled to recover actual damages, punitive damages, and costs pursuant 15 U.S.C. § 1681n.
7
8  Alternatively, Plaintiff is entitled to actual damages, and costs if the violation is negligent,
9  pursuant to 15 U.S.C. §1681o.
10
11
12
13
14
15      **Count II – Violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
16      **Against Defendant JP Morgan Chase Bank, N.A.**
17  All preceding paragraphs are re-alleged.
18
19  Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to consider all relevant information
20  provided by the consumer reporting agencies, including Experian regarding Plaintiff's dispute.
21  Defendant ignored the supporting documentation showing the account was in active litigation
22  and continued to report the tradeline without reflecting that the account was disputed and subject
23  to legal action.
24
25  Defendant's failure to review this relevant information caused Plaintiff measurable harm,
26  including higher interest rates on approved credit applications, reductions in available credit
27  limits, financial strain, and emotional distress in the form of frustration, loss of sleep, and
    headaches.
28


Defendant's conduct was negligent and/or willful.

Plaintiff is entitled to recover actual damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n.

Alternatively, Plaintiff is entitled to recover actual damages and costs if Defendant's violation is found to be negligent, pursuant to 15 U.S.C. § 1681o.

### Count 4 Violation of the FCRA, 15 U.S.C §1681s-2(b)(1)(D) Against Defendant JP Morgan Chase Bank, N.A.

All preceding paragraphs are re-alleged.

Defendant violated 15 U.S.C. § 1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies of corrections or updates following Plaintiff's dispute. Even after being furnished with information showing the account was disputed and subject to litigation, Defendant continued to report the tradeline inconsistently and failed to ensure that Experian and other consumer reporting agencies received updated and accurate information.

As a result of this failure, Plaintiff suffered measurable harm, including higher interest rates on approved credit applications, reductions in available credit limits, financial strain, and distress manifested by frustration, headaches, migraines, and loss of sleep.

Defendant's conduct was negligent and/or willful.

Plaintiff is entitled to recover actual damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n.

Alternatively, Plaintiff is entitled to recover actual damages and costs if Defendant's violation is found to be negligent, pursuant to 15 U.S.C. § 1681o.

## Count 5 Violation of the FCRA, 15 U.S.C §1681s-2(b)(1)(E) Against Defendant JP Morgan Chase Bank, N.A.

All preceding paragraphs are re-alleged.

Defendant violated 15 U.S.C. § 1681s-2(b)(1)(E) by continuing to furnish information that was inaccurate, incomplete, or unverifiable after Plaintiff's dispute. Specifically, Defendant failed to establish and follow procedures to modify or correct its reporting, even when presented with documentation showing that the account was disputed and the subject of litigation.

This subsection requires that, if disputed information is found to be inaccurate, incomplete, or cannot be verified after reinvestigation, the furnisher must promptly (i) modify the item of information; (ii) delete the item of information; or (iii) permanently block the reporting of that item. Defendant failed to take any of these actions.

Defendant's continued reporting omitted the fact that the account was in dispute and in litigation, creating a materially misleading impression that the account was valid and enforceable.

As a result, Plaintiff suffered harm including higher interest rates on approved credit applications, reductions in credit limits on existing accounts, financial strain, and emotional distress manifested by frustration, loss of sleep, and headaches.

Defendant's conduct was negligent and/or willful.

Plaintiff is entitled to recover actual damages, punitive damages, and costs pursuant to 15 U.S.C. § 1681n.

Alternatively, Plaintiff is entitled to recover actual damages and costs if Defendant's violation is found to be negligent, pursuant to 15 U.S.C. § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendant as follows:

1. Awarding Plaintiff actual damages under 15 U.S.C. §§ 1681n and 1681o;

2. Awarding Plaintiff statutory damages under 15 U.S.C. § 1681n;

3. Awarding punitive damages for Defendant's willful violations of the FCRA;

4. Awarding Plaintiff the costs of this action together with reasonable attorney's fees and expenses;

5. Ordering deletion of the inaccurate tradeline;

6. Granting such other equitable and legal relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Vernell McCall

[Address]

[Phone]

[Email]